## Curt, Appellant, *v.* Ziman.

26

Argued March 5, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*James K. Peck,* with him *Ralph W. Rymer,* for appellant.

*Walter W. Harris,* of *O'Malley, Hill, Harris & Harris,* for appellee.

OPINION BY CUNNINGHAM, J., April 22, 1940:

Plaintiff brought this action to recover for personal injuries sustained as a result of placing his hand against

a circular saw in defendant's ice-cutting machine. He obtained a verdict for $1500 but thereafter the lower court entered judgment n. o. v. for the defendant, upon the ground of absence of proof of defendant's negligence and for the further reason that, even if defendant's negligence be assumed, plaintiff had been guilty of contributory negligence as a matter of law.

In disposing of this appeal by the plaintiff from that judgment it is our duty to read the record in the light most advantageous to him, resolving every conflict in the testimony in his favor and giving him the benefit of every inference fairly deducible from the evidence when so read.

Plaintiff's version of the circumstances under which his injuries were received may be thus outlined: He went to defendant's place of business to sell him machine oil and collect a bill. On arrival he was told by the defendant, with whom he had previously dealt and who was engaged in the ice business, that if he wanted to talk he would have to come up on defendant's platform. Plaintiff thereupon followed the defendant along a narrow platform and into a shack at the north end thereof. On entering the shack, the defendant commenced operating an ice-cutting machine.

Plaintiff testified the machine resembled a table made of plain cast iron, the top of which was about four feet from the floor. It was about three feet wide by three and one-half feet long, and was supported by four legs. In the center of the top plaintiff says he saw a hopper. The machine was rectangular in shape, but on the north end there was a "scallop" or apron extending out a few inches from the machine. The defendant stood at the south end of the machine in order to operate it. On its north end was a chute through which "snow" (actually small particles of ice chipped off by the saws) was expelled from the machine. This chute was about eight inches wide, and emptied into a lard bucket about twenty inches in height.

Plaintiff stood some five or six inches from the northeast corner of the machine watching its operation. He reached over with his right hand and took some of the snow off the lower edge of the chute, which he exhibited to the defendant. After having reached down a second time, plaintiff said: "I'm going to make a snowball." Defendant replied: "Go ahead."

Relative to the injury, plaintiff testified: "Well, I didn't have enough snow to make a good snowball and I reached down the third time and took a little more off and I thought I felt something tick me, just like hitting your nose with a pencil." Upon withdrawing his hand, plaintiff found it had been severely injured by coming in contact with the saws. He also testified he had reached into the machine a distance of five or six inches.

Referring to his three efforts to get enough snow to make a ball, plaintiff said: "...... I took a kind of swipe, like you would take a swipe off the top of a wall or board, I took a little off the bottom [of the chute]. The second time I went a little higher and the third time I went a little higher than that ...... to get a little more snow."

Plaintiff testified he saw no guards on the machine and was not warned in any way by the defendant. With respect to the saws he said: "They were below the table, and out of sight; even if you leaned like that you couldn't see. You would have to go way down like this to see them, and I didn't any more than bend my hips."

On cross-examination plaintiff said he "couldn't see up under that chute" from where he stood. His testimony continued: "Q. Now, Mr. Curt, you knew that some knives or saws or sharp cutting instruments were cutting that block of ice into cubes, you knew that, didn't you? A. I assumed they were, and I also assumed there would be a guard to protect them."

We therefore have a case in which the plaintiff, a business invitee, was injured as a result of voluntarily

putting his hand into the interior of a cutting machine. He knew the purpose of the machine, knew it was in operation, and admitted he did not stoop low enough to see the portion of the machine into which he thrust his hand. He contends he acted as he did because the defendant told him to "go ahead" after he had stated his intention of making a snowball out of the particles of ice expelled by the machine.

As plaintiff, under his testimony, was a business invitee, defendant owed him an affirmative duty to keep his premises in a reasonably safe condition, or to warn him of any dangerous conditions which defendant knew or should have known existed: *Vetter v. Great Atlantic & Pacific Tea Co.*, 322 Pa. 449, 185 A. 613; *Markman v. Fred P. Bell Stores Co.*, 285 Pa. 378, 132 A. 178; *Durning v. Hyman*, 286 Pa. 376, 133 A. 568; Restatement, Law of Torts, Sec. 343.

But plaintiff was not injured by reason of any defective condition of the premises. The injury was caused by the defendant's machinery, and there is no evidence from which it can be inferred that the machinery would endanger a mere bystander. Only by meddling with it could injury result, and the danger of sticking one's hand into the interior of a cutting machine, while in operation, must be obvious to any reasonable man. The rule is well settled that there is no duty to warn or guard against the obvious. *Walker v. Broad and Walnut Corp. et al.*, 320 Pa. 504, 506, 182 A. 643; *Rice v. Kring*, 310 Pa. 550, 165 A. 833; *Vant v. Roelofs*, 217 Pa. 535, 66 A. 749. Hence it cannot be said defendant was under any duty to warn plaintiff of the saws or to put a guard in the machine.

Plaintiff asserts there was such a duty, and in support of this contention cites four cases. In *Vetter v. Great Atlantic and Pacific Tea Company*, supra, the plaintiff was a business invitee who slipped on a banana peel on a dark stairway. In *Murphy v. Bernheim & Sons, Inc.*, 327 Pa. 285, 194 A. 194, a business invitee,

fell down an insufficiently lighted elevator shaft. In *Fredericks v. Atlantic Refining Co.*, 282 Pa. 8, 127 A. 615, the plaintiff was injured as a result of the defective condition of defendant's instrumentality (a gasoline line) coupled with the negligence of its employee. The case of *Cathcart v. Sears, Roebuck and Company*, 120 Pa. Superior Ct. 531, 183 A. 113, involved injuries resulting from a fall on dimly lighted steps of the defendant. Obviously, none of these cases sustains plaintiff's contention as to defendant's duty in the present one, as the facts are not at all analogous.

This case, however, does contain the factor that the defendant told the plaintiff to "go ahead" and make a snowball. Plaintiff argues that this statement, coupled with the fact that defendant knew of plaintiff's prior action in picking up some snow, constituted an invitation to him to put his hand up the chute. It may be conceded that it is negligence expressly or impliedly to invite one to do an act which the invitor knows or should know to be dangerous. *Elkins, Bly & Co. v. McKean*, 79 Pa. 493, *Ebbert et al. v. Phila. Electric Co.*, 330 Pa. 257, 198 A. 323. However, the difficulty from the plaintiff's point of view is that the defendant's statement to "go ahead" and make a snowball cannot reasonably be construed as an *invitation* to plaintiff to place his hand in the interior of the machine.

The word "invitation" is defined as a solicitation or request to do an act. Here the defendant did not request, or even suggest, that plaintiff make a snowball, but merely assented to defendant's own suggestion about making one.

It was not necessary for the plaintiff to reach into the machine to obtain the snow. He could have taken the snow from the lard bucket or the bottom of the chute, and if there was no snow in the bucket or on the chute he had only to wait until the operation of the machine caused the accumulation of enough snow to serve his purpose. Under such circumstances the court below

was clearly right in saying that no reasonable man could have construed the defendant's remark as an invitation to reach into the machine.

In the case of *Szanborsky v. Armour and Co.*, 306 Pa. 525, 160 A. 219, the facts were that plaintiff came to defendant's packing plant to see the manager on business. His office fronted on a hall; at its end and some six feet from the door leading into the office, was an engine room in which, directly in front of its entrance, was an electric motor. The machine was guarded by iron piping two and one-half inches in diameter in the nature of a fence about four feet high and composed of upright pipes at each end and two horizontal pipes fitted into the uprights. One of the horizontal pipes was at the top of the fence, and the other about two and one-half feet from the floor.

Plaintiff testified the manager told him to sit down and pointed to the guard rail. Plaintiff sat on the lower rail, with his back to one of the uprights and his right foot stretched along the lower horizontal rail. While plaintiff was in this position the motor started suddenly and his foot was caught in a pulley and torn off. Our Supreme Court reversed a judgment for the plaintiff and entered judgment n. o. v. for the defendant. In the course of the opinion it was said (p. 529) :

"It could not be pretended that in putting his leg on the rail he assumed this position by the express direction of the manager. Even if the latter did indicate that he was to seat himself on the guard rail, it does not follow that in taking the unusual position he did he was obeying the manager's specific direction. The usual way for persons to seat themselves is with feet on the floor. When plaintiff put his leg along the guard rail, he assumed the risk of this out-of-the ordinary position just as he would have done had he sat in a similar way on a bench. If his foot had been on the floor where it belonged, he would not have been injured. He could not for his own comfort or for any other reason balance it longitudinally along the rail and visit

defendant with responsibility for the result which flowed from this unexpected and unusual procedure, even if the manager did indicate the rail as the place for his seating. While he says the electric motor was not running, and we are accepting this statement at its full face value, he knew it was a machine with pulleys and a belt on it and he could not place himself in dangerous proximity to it, even when not running, and escape a charge of his own negligence, if it began to operate and because of his nearness to it injured him. In our view of the case, even if the manager indicated that he should sit on the rail, the way that he did so, convicts him of contributory negligence and he cannot recover."

This reasoning is applicable, and in our opinion controlling, in the case now at bar. See also *Landis v. Curtis & Jones Co. Inc.*, 224 Pa. 400, 73 A. 424, in which it is held that it is negligence, as a matter of law, to put one's hand into a machine in operation.

Finally, plaintiff invokes the doctrine of discovered peril, i. e., that a plaintiff may recover notwithstanding his own negligence if the defendant failed to exercise due care to avoid inflicting the injury after he knew or should have known the plaintiff was in a position of peril. *Hess v. Kemmerer,* 65 Pa. Superior Ct. 247, 45 C. J. Sec. 539, Harper on Torts, Sec. 138 et seq.

Obviously, the doctrine cannot be applied where the facts fail to show the defendant knew or should have known the plaintiff was in a position of peril. Plaintiff argues that defendant saw him take two helpings of snow and therefore should have known he was in a position of peril. The difficulty in accepting this argument is that the machine was between the defendant and the plaintiff. Hence, defendant could only have seen plaintiff bend over to take the snow, but could not tell whether he was reaching up into the chute. Defendant had no duty to anticipate the plaintiff would negligently expose himself to danger: *Walker v. Broad and*

*Walnut Corp.,* supra. For all that appears in the record, defendant may have thought the plaintiff was reaching into the bucket or was taking the snow from the lower end of the chute, which would have been safe.

We see no room for the application of the doctrine of discovered peril in this case. None of the assignments can be sustained.

Judgment affirmed.