JULIETTE CHARRON *v.* CANADIAN PACIFIC RAILWAY COMPANY.
(55 A2d 614)

October Term, 1947.

Present: MOULTON, C. J., BUTTLES, STURTEVANT and JEFFORDS, JJ. and CLEARY, Supr. J.

Opinion filed November 4, 1947.

226

*Hubert S. Pierce* for the defendant.

*John A. Swainbank* and *Sterry R. Waterman* for the plaintiff.

JEFFORDS, J. This is an action of tort. The verdict and judgment were for the plaintiff, and the case is here on exceptions by the defendant.

The defendant moved for a directed verdict upon several grounds, one only of which need be considered. This ground was that taking the evidence in the light most favorable to the plaintiff she has failed to show that the defendant or its agents were guilty of any acts of negligence which were a proximate cause of her injury. The lower court denied the motion with exceptions to the defendant.

Viewed in the light most favorable to the plaintiff the jury could reasonably have found the following facts: The plaintiff went to the Lyndonville passenger station of the defendant with three children for the purpose of assisting the children to board the defendant's afternoon train. She carried two suit cases belonging to the children. When they reached the station the train had already arrived and all of the passengers had entered or left the train and neither the conductor nor the trainman was in sight. The plaintiff and the children entered a coach by an open door in the vestibule

of that or another coach. She placed the children and their baggage in a seat in the car, gave them their fare and hurried out. When she was about to step onto the last car step the train started. The plaintiff then decided not to get off the train but to ride to St. Johnsbury and return by another train. She stepped down to the last step to wave to her own children, who had accompanied her to the station, to show this intention. After she had finished waving she turned and started up the car steps to reenter the coach. She remembers nothing after that until some time after she had been picked up in the railroad yard nearly 700 feet from the point where she entered the train, so was unable to tell what caused her to fall from the train.

The train in question had a scheduled arrival and leaving time of 1.39, having no scheduled station time. The plaintiff had travelled on this train many times and knew that it ordinarily remained at this station a short time. To reach the station platform it was necessary for the plaintiff to come around the rear of the train. She knew that no one in control of the train knew that she had entered it.

The conductor and the trainman assisted passengers on and off the train upon its arrival at the station and then left the entrances at which they had been stationed to perform other duties. The conductor went into the station to get his orders and the trainman into the baggage car there to perform certain duties. The conductor was standing on the platform of the station when he received a signal from the baggage man to start the train. He then called "all aboard", stepped onto the train and closed the door and platform of the vestibule of the coach of which he had charge. As soon as the train started the trainman left the baggage car, his duties there being over, and came back to close the door over which he had charge. This was the door from which the plaintiff fell before it was reached by the trainman. The conductor testified that he did not have "any knowledge from any means whatsoever that Mrs. Charron was on the train". The trainman had deceased before trial but there is nothing in the evidence to indicate that he or any other person in charge of the train had actual or constructive notice that the plaintiff had entered the train.

Two claims of negligence were submitted to the jury. These, briefly stated, were failure to have an employee of the defendant present to assist or warn persons rightfully entering or leaving the

train when it was about to start and failure to close the entrance to the coach before or at the time the train started.

█ The evidence is undisputed that no person in charge of the train knew that the plaintiff had entered it. Thus it was the duty of the plaintiff to notify some one of the train crew of her purpose in entering the train in order to charge the defendant with the duty of exercising care for her safety when leaving. *Seaboard Air Line Ry.* v. *Bradley,* 125 Ga 193, 54 SE 69, 114 Am St Rep 196; *Little Rock & Ft. S. Ry. Co.* v. *Lawton,* 55 Ark 428, 18 SW 543, 15 LRA 434, 29 Am St Rep 48; *Kohler* v. *Pa. R. Co.,* 305 Pa 249, 157A 618. Nor did the defendant owe the plaintiff a duty to have some one at hand to whom notice of her purpose could be given. *Kohler* v. *Pa. R. Co., supra.* There was no duty on the part of the conductor or trainman to enter the train and inquire of persons whether they desired to get off before signalling for the train to start. *Midland Valley R. Co.* v. *Bailey,* 34 Okla 193, 124 P 987; *Louisville & M. R. Co.* v. *Espenchild,* 17 Ind App 558, 47 NE 186.

█ As the defendant had no knowledge, actual or constructive, that the plaintiff was on the train to assist passengers there was no duty on its part to provide for her safety by closing the door to the coach or by stationing some one there to assist or warn her when leaving the train. *Ches. & Ohio Ry. Co.* v. *Paris,* 111 Va 41, 68 SE 398, 28 ALRNS 773; *Wickert* v. *Wisc. Cent. Ry. Co.,* 142 Wis 375, 125 NW 943, 20 Ann Cas 452; *Atl. Coast Line R. Co.* v. *Watson,* 215 Ala 254, 110 So 316; *Griswold* v. *Chicago & N. W. Ry. Co.,* 64 Wis 652, 26 NW 101; *Dunne* v. *N. Y., N. H. & H. R. Co.,* 91 NYS 145, 99 App Div 571. See also the cases first above cited and note 67 to sec. 2388 of Elliott on Railroads, 3rd ed.

The law applicable to this situation is well stated in *Little Rock & Ft. S. Ry. Co.* v. *Lawton, supra,* as follows: "The law could not, in reason or justice, impose as a duty the doing of that which, in the light of everything known to trainmen, would not appear necessary or proper."

█ As there was no duty owed by the defendant to the plaintiff to provide for her safety in the ways here in question there was no negligence on its part as negligence presupposes a breach of duty owed by the party charged to the party injured. *Chicoine* v. *Cashman,* 108 Vt 133, 136, 183A 487; *Bottum's Admr.* v. *Hawks,* 84 Vt 370, 372, 79A 858, 35 LRANS 440, and cases above cited.

Most, if not all, of the cases to which we have referred have to

do with claims of negligence based on facts tending to show that the trains were not held for a reasonably sufficient time to allow the persons to alight. We were unable to find any cases having to do with persons entering a train to assist passengers who based their claims on failure to close entrances to cars before starting. The cases of *St. Louis & S. F. R. Co.* v. *Lee,* 37 Okla 545, 132 P 1072, 46 LRANS 357, *Kohler* v. *Pa. R. Co., supra,* and *Dunne* v. *N. Y., N. H. & H. R. Co., supra,* are authorities, however, for holding that lacking knowledge that the plaintiff was on the train the defendant owed her no duty to have a person present to assist or warn her when leaving. There is no distinction in principle in the two claims of negligence here made. The rule should be the same as to each. Nor is there any such distinction between failure to hold trains a reasonably sufficient time to allow persons to alight therefrom and failure to close entrances to cars. Both are safety measures and the duty to take them is as much dependent on knowledge in one case as in the other.

The same result is reached for reasons different in wording but not in principle, which may be stated briefly as follows: A carrier has the right to expect that one who boards its train without its knowledge to assist a passenger will leave before the train departs or if this is impossible that he will notify one of the proper persons in charge of the train so that necessary precautions may be taken for his safety. Lacking this knowledge or information the carrier, as a prudent person, has no reason to anticipate that the person will be injured by failure to provide certain measures for his safety which would be required if his presence were known. Consequently there is no negligence if such measures are not taken. *Wickert* v. *Wisc. Cent. Ry. Co., supra; St Louis & S. F. Co.* v. *Dyer,* 115 Ark 262, 170 SW 1013, a vestibule case involving a passenger. This test for negligence is found in our cases. In *Woodcock's Admr.* v. *Hallock,* 98 Vt 284 at page 290, 127A 380, 382, it is said: "It is well established with us that on the question of what is negligence, it is material to consider the consequences that a prudent man might reasonably have anticipated."

Since we find no violation of duty, and therefore no negligence, on the part of the defendant, we need not consider its other exceptions.

*Judgment reversed and judgment for the defendant to recover its costs.*